**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

|  |  |
|---|---|
| VALTRUS INNOVATIONS LTD. and KEY PATENT INNOVATIONS LIMITED, <br><br><br> Plaintiffs, <br><br><br> v. <br><br><br> GOOGLE LLC, <br><br><br> Defendant. | **Case No. 3:22-cv-00066-L-BW** <br> (Consolidated with No. 3:24-cv-1795-L) <br><br> **JURY TRIAL DEMANDED** |

**PLAINTIFFS VALTRUS INNOVATIONS LTD. AND KEY PATENT INNOVATIONS
LIMITED'S OBJECTIONS TO MAGISTRATE JUDGE ORDER**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.  LEGAL STANDARD ........................................................................................ 2

    A.  Review Under Federal Rule of Civil Procedure 72(a) .......................... 2

    B.  Change of Venue Pursuant to 28 U.S.C. § 1404(a) .............................. 4

II.  THE MAGISTRATE JUDGE'S ORDER ...................................................... 6

III.  ARGUMENT ................................................................................................ 7

    A.  First Objection: the Order's Decision to Transfer the Case Is Contrary to Law Because the Order Applied the Incorrect Legal Standard ........................ 7

    B.  Second Objection: the Order's Analysis of the Cost of Attendance for Willing Witnesses Is Contrary to Law and Clearly Erroneous Because the Order Did Not Give Additional Weight to Non-Party Witnesses and Disregarded the Fifth Circuit's 100-Mile Rule ...................................... 8

    C.  Third Objection: the Order's Conclusion that the Practical Problems that Make Trial of a Case Easy, Expeditious, and Inexpensive "Weighs Only Slightly Against Transfer" Is Contrary to Law and Clearly Erroneous Because Google Was Required to Act with Reasonable Promptness ........................................................................................ 11

    D.  Fourth Objection: the Order's Analysis of the Local Interest in Having Localized Interests Decided at Home Is Contrary to Law and Clearly Erroneous Because the Northern District of Texas, Not the Northern District of California, Is "the Place of the Alleged Wrong" ............................. 12

    E.  Fifth Objection: the Order's Analysis of the Relative Ease of Access to Sources of Proof Is Contrary to Law and Clearly Erroneous Because Google Failed to Cite Evidence that the Northern District Of Texas "Lacks Any Evidence Relating to the Case," and the Evidence Showed the Contrary ......................................................................................... 13

IV.  CONCLUSION .......................................................................................... 16

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*ACQIS LLC v. MiTAC Comput. Tech. Corp.*,
No. W-20-CV-00962-ADA, 2021 WL 4805431 (W.D. Tex. Oct. 14, 2021) ........................2, 8

*Advanced Physicians, S.C. v. Conn. Gen. Life Ins. Co.*,
431 F. Supp. 3d 857 (N.D. Tex. 2020) ....................................................................................3

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*,
571 U.S. 49 (2013) ..................................................................................................................6

*Bank One, N.A. v. Euro-Alamo Invs., Inc.*,
211 F. Supp. 2d 808 (N.D. Tex. 2002) ................................................................................1, 6

*Baylor Health Care Sys. v. Equitable Plan Servs., Inc.*,
955 F. Supp. 2d 678 (N.D. Tex. 2013) ....................................................................................2

*BNSF Ry. Co. v. OOCL (USA), Inc.*,
667 F. Supp. 2d 703 (N.D. Tex. 2009) ....................................................................................9

*Canine Caviar Pet Foods v. Pied Piper Pet*,
No. 3:09-CV-00677-L, 2009 WL 2568206 (N.D. Tex. Aug. 19, 2009) ...................................9

*Catskill Dev., L.L.C. v. Park Place Ent. Corp.*,
206 F.R.D. 78 (S.D.N.Y. 2002) ..............................................................................................3

*In re Chamber of Com. of U.S.*,
105 F.4th 297 (5th Cir. 2024) ..........................................................................................5, 11

*Civil Rts. Dep't v. Grimmway Enters., Inc.*,
768 F. Supp. 3d 1099 (E.D. Cal. 2025) ...................................................................................3

*In re Clarke*,
94 F.4th 502 (5th Cir. 2024) ....................................................................................... *passim*

*Def. Distributed v. Bruck*,
30 F.4th 414 (5th Cir. 2022) ....................................................................................... *passim*

*Golden v. United States*,
955 F.3d 981 (Fed. Cir. 2020) ...............................................................................................13

*Ingle v. Butler*,
No. 2:24-CV-140-Z-BR, 2025 WL 1182088 (N.D. Tex. Apr. 23, 2025) ............................3, 7

*Lahr v. Fulbright & Jaworski, L.L.P.*,
  164 F.R.D. 204 (N.D. Tex. 1996) ...........................................................3

*Merrill v. Waffle House, Inc.*,
  227 F.R.D. 475 (N.D. Tex. 2005) ...........................................................3

*Metts v. United States*,
  No. 3:25-CV-112-L, 2025 WL 1426088 (N.D. Tex. May 15, 2025) ......................8

*Orthoflex, Inc. v. ThermoTek, Inc.*,
  990 F. Supp. 2d 675 (N.D. Tex. 2013) ....................................................3

*Peteet v. Dow Chem. Co.*,
  868 F.2d 1428 (5th Cir. 1989) .........................................................5, 11

*In re Planned Parenthood Fed'n of Am., Inc.*,
  52 F.4th 625 (5th Cir. 2022) ..........................................................5, 15

*Quest NetTech Corp. v. Apple, Inc.*,
  No. 2:19-cv-118-JRG, 2019 WL 6344267 (E.D. Tex. Nov. 27, 2019) ...................2

*Roco v. Am. Airlines, Inc.*,
  No. 3:21-cv-2839-L, 2022 WL 658566 (N.D. Tex. Mar. 4, 2022).......................9

*Salem Radio Reps., Inc. v. Can Tel Mkt. Support Grp.*,
  114 F. Supp. 2d 553 (N.D. Tex. 2000) .................................................5, 11

*Sargent v. Sun Tr. Bank, N.A.*,
  No. 3:03-CV-2701, 2004 WL 1630081 (N.D. Tex. July 20, 2004).......................9

*Smith v. Smith*,
  154 F.R.D. 661 (N.D. Tex. 1994) ...........................................................3

*TGI Friday's, Inc. v. Great Nw. Rests., Inc.*,
  652 F. Supp. 2d 750 (N.D. Tex. 2009) ................................................8, 9

*TIG Ins. Co. v. NAFCO Ins. Co.*,
  177 F. Supp. 2d 561 (N.D. Tex. 2001) ....................................................9

*In re TikTok, Inc.*,
  85 F.4th 353 (5th Cir. 2023) ...................................................... *passim*

*Time, Inc. v. Manning*,
  366 F.2d 690 (5th Cir. 1966) ...............................................................6

*United Healthcare Servs. Inc. v. Rossel*,
  No. 3:21-CV-15470-L-BT, 2025 WL 1572735 (N.D. Tex. June 4, 2025)................3

*United States v. Stevens*,
    487 F.3d 232 (5th Cir. 2008) ...........................................................................................3

*In re Volkswagen of Am. Inc.* [*Volkswagen II*],
    545 F.3d 304 (5th Cir. 2008) (en banc) ..................................................... *passim*

*Wilson v. Tex. Chris. Univ.*,
    No. 3:20-cv-00106-M, 2021 WL 12289114 (N.D. Tex. Aug. 2, 2021) ......................5, 11, 12

**Statutes**

28 U.S.C. § 1404(a) ..............................................................................................1, 4, 10

**Rules**

Fed. R. Civ. P. 26 ...........................................................................................................12

Fed. R. Civ. P. 72(a) ...............................................................................................1, 2, 7

LR 72.1 ...........................................................................................................................1

Pursuant to Federal Rule of Civil Procedure 72(a) and LR 72.1, Plaintiffs Valtrus Innovations Ltd. and Key Patent Innovations Limited (together, "Plaintiffs") respectfully submit the following objections to the Magistrate Judge's July 23, 2025 Memorandum Opinion and Order (the "Order"). *See* Order (Dkt. 294).

The Order applied the incorrect legal standard—preponderance of the evidence—in analyzing Defendant Google LLC's ("Google") transfer motion. *See id.* at 7 ("The moving party bears 'the burden of proving by a preponderance of the evidence that transfer is appropriate.'" (quoting *Bank One, N.A. v. Euro-Alamo Invs., Inc.*, 211 F. Supp. 2d 808, 812 (N.D. Tex. 2002))). Google barely cleared that low threshold. The Order determined that the public-interest factors— one of which favored transfer and one of which did not[1]—"slightly favor[ed] transfer to NDCA." *Id.* at 21. The private-interest factors—two of which favored transfer and one of which did not— "weigh[ed] overall in favor of transfer to NDCA." *Id.* at 18. With three factors in favor of transfer, two against, and three neutral, the Order's conclusion was based on a finding that the Northern District of California, on balance, is more likely than not to be more convenient—in direct contravention of Fifth Circuit precedent. *See* Order at 22; *see also In re Clarke*, 94 F.4th 502, 508 & n.3 (5th Cir. 2024).

The controlling law instructs that "[t]ransfer under 28 U.S.C. § 1404(a) is properly granted only if the moving party 'clearly establishes good cause,'" and "***a mere preponderance of the evidence is insufficient***." *Clarke*, 94 F.4th at 508 & n.3 (emphasis added). Google cannot clear that high hurdle based upon the Order's factual determinations concerning the public-interest and private-interest factors. The "standard is not met by showing one forum is more likely than not to

---

[1] To be precise, the Order determined that the administrative difficulties flowing from court congestion was "neutral or, at most, only slightly favors denying transfer." Order at 19.

be more convenient," *Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022), but the Order's findings support nothing more than just that.  The Order did not, and could not, make a finding that Google clearly established good cause for transfer.  Instead, the Order concluded that a minority (three of eight) of factors weighed in favor of transfer, and transferred the case to the Northern District of California based upon the preponderance of the evidence.  The Order's determinations do not support a finding that Google showed "materially more than a mere preponderance of the evidence," as Google was required to do.  *ACQIS LLC v. MiTAC Comput. Tech. Corp.*, No. W-20-CV-00962-ADA, 2021 WL 4805431, at *2 (W.D. Tex. Oct. 14, 2021) (quoting *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118-JRG, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019)).  Thus, the Order was contrary to law.  When the correct legal standard is applied to the Order's factual determinations concerning the public-interest and private-interest factors, transfer must be denied.

In addition, Plaintiffs respectfully submit that the Order made certain erroneous findings that further mandate that the Order be set aside, as explained in more detail below.  Accordingly, Plaintiffs request that the Court set aside the Magistrate Judge's decision to transfer this matter to the Northern District of California and order that the case proceed where it has been pending since January 2022: in the Northern District of Texas.

## I.    LEGAL STANDARD

### A.    Review Under Federal Rule of Civil Procedure 72(a)

Pursuant to Federal Rule of Civil Procedure 72(a), if a party timely files objections to a magistrate judge's order on a nondispositive matter, "[t]he district judge in the case must . . . modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Baylor Health Care Sys. v. Equitable Plan Servs., Inc.*, 955 F. Supp. 2d 678, 689 (N.D. Tex. 2013) (brackets and ellipsis in original) (quoting Fed. R. Civ. P. 72(a)).  "Courts have interpreted this

language to create distinct standards of review for findings of fact and conclusions of law." *Advanced Physicians, S.C. v. Conn. Gen. Life Ins. Co.*, 431 F. Supp. 3d 857, 860 (N.D. Tex. 2020). "The Court reviews the Magistrate Judge's legal conclusions *de novo*, and reviews [his or] her factual findings for clear error." *Merrill v. Waffle House, Inc.*, 227 F.R.D. 475, 476 (N.D. Tex. 2005).

"When a party objects to a magistrate judge's ruling on the ground that it is contrary to law, the party must demonstrate that the magistrate judge erred in some respect in his legal conclusions," which "are freely reviewable by the district judge." *Smith v. Smith*, 154 F.R.D. 661, 665 (N.D. Tex. 1994). Specifically, "an order is 'contrary to law' when it 'fails to apply or misapplies relevant statues, case law, or rules of procedure.'" *Ingle v. Butler*, No. 2:24-CV-140-Z-BR, 2025 WL 1182088, at *1 (N.D. Tex. Apr. 23, 2025) (quoting *Catskill Dev., L.L.C. v. Park Place Ent. Corp.*, 206 F.R.D. 78, 86 (S.D.N.Y. 2002)); *accord Civil Rts. Dep't v. Grimmway Enters., Inc.*, 768 F. Supp. 3d 1099, 1104 (E.D. Cal. 2025) ("A magistrate judge's decision is 'contrary to law' if it applies an incorrect legal standard[.]" (citation omitted)). "[T]he district judge 'reverses if the magistrate judge erred in some respect in [his or] her legal conclusions.'" *Orthoflex, Inc. v. ThermoTek, Inc.*, 990 F. Supp. 2d 675, 683 (N.D. Tex. 2013) (quoting *Lahr v. Fulbright & Jaworski, L.L.P.*, 164 F.R.D. 204, 208 (N.D. Tex. 1996)).

"The 'clearly erroneous' standard applies to the factual components of the magistrate judge's decision." *Smith*, 154 F.R.D. at 665. A factual finding "is 'clearly erroneous' if, 'on the entire evidence [the reviewing court] is left with the definite and firm conviction that a mistake has been committed." *United Healthcare Servs. Inc. v. Rossel*, No. 3:21-CV-15470-L-BT, 2025 WL 1572735, at *4 (N.D. Tex. June 4, 2025) (quoting *United States v. Stevens*, 487 F.3d 232, 240 (5th Cir. 2008)).

**B.**      **Change of Venue Pursuant to 28 U.S.C. § 1404(a)**

In the Fifth Circuit, "[t]ransfer under 28 U.S.C. § 1404(a) is properly granted only if the moving party 'clearly establishes good cause' by clearly demonstrating that a transfer is for the convenience of the parties and witnesses, in the interest of justice." *Clarke*, 94 F.4th at 508 (quoting *Def. Distributed*, 30 F.4th at 433). "It is the movant's burden—and the movant's alone—to 'adduce evidence and arguments that clearly establish good cause for transfer based on convenience and justice.'" *Id.* (quoting *Def. Distributed*, 30 F.4th at 433). "At minimum, showing 'good cause' requires the movant 'clearly [to] demonstrate' that its chosen venue is 'clearly more convenient.'" *Id.* (quoting *Def. Distributed*, 30 F.4th at 433). That standard is not met if the movant merely shows that the transferee venue "is more likely than not to be more convenient." *Id.* (quoting *Def. Distributed*, 30 F.4th at 433). "Likewise, 'the fact that litigating would be more convenient for the defendant elsewhere is not enough to justify transfer.'" *Id.* (quoting *Def. Distributed*, 30 F.4th at 433). "Accordingly, to establish 'good cause,' a movant must show (1) that the marginal gain in convenience will be *significant*, and (2) that its evidence makes it plainly obvious—i.e., clearly demonstrated—that those marginal gains will *actually* materialize in the transferee venue." *Id.*

"The district court—when assessing whether the movant clearly carried its burden—must consider the following public-interest and private-interest factors." *Id.* at 509. "The private-interest factors are '(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Id.* (quoting *In re Volkswagen of Am. Inc.* [*Volkswagen II*], 545 F.3d 304, 315 (5th Cir. 2008) (en banc)). "The public-interest factors are '(5) the administrative difficulties flowing from court congestion; (6) the local interest in having localized interests decided at home; (7) the

familiarity of the forum with the law that will govern the case; and (8) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.'" *Id.* (quoting *In re TikTok, Inc.*, 85 F.4th 353, 358 (5th Cir. 2023)). "No factor is of dispositive weight," and the Fifth Circuit has "cautioned against a 'raw counting of the factors' that 'weigh[s] each the same.'" *Id.* (quoting *TikTok*, 85 F.4th at 358). "Moreover, '[w]here there is no demonstration by the movant, let alone a clear one, the [district] court cannot weigh a factor against the non-movant and in favor of transfer.'" *Id.* (quoting *Def. Distributed*, 30 F.4th at 434). "Neutral" factors "lend [the party seeking transfer] no support for transferring" to another district. *Id.* at 515.

The public-interest and private-interest factors "are not necessarily exhaustive or exclusive." *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022) (quoting *Volkswagen II*, 545 F.3d at 315). "Pertinent here, 'courts have considered a party's delay in denying a motion to transfer.'" *Id.* (quoting *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989)). That is so because "parties who seek a transfer must act with reasonable promptness." *In re Chamber of Com. of U.S.*, 105 F.4th 297, 307 n.50 (5th Cir. 2024); *see also Salem Radio Reps., Inc. v. Can Tel Mkt. Support Grp.*, 114 F. Supp. 2d 553, 558 (N.D. Tex. 2000) ("[M]otions for change of venue must be filed with 'reasonable promptness.'" (quoting *Peteet*, 868 F.2d at 1436)). "A party's delay in filing a motion to transfer venue" can "serve as the sole basis for the denial of transfer." *Wilson v. Tex. Chris. Univ.*, No. 3:20-cv-00106-M, 2021 WL 12289114, at *3 (N.D. Tex. Aug. 2, 2021) ("Here, over a year elapsed from the filing of the Original Complaint in January 2020, to the time when Defendants moved to transfer on February 15, 2021. In addition, Defendants represented to the Court in June 2020 that they intended to seek transfer, but did not file their Motion for eight months. Defendants give no explanation for this delay.").

The Court "must also give some weight to [a] plaintiff['s] choice of forum' and his role as master of the complaint." *Clarke*, 94 F.4th at 515-16 (quoting *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 62 n.6 (2013)).

## II.    THE MAGISTRATE JUDGE'S ORDER

The Order applied "a preponderance of the evidence" standard in analyzing Google's Motion to Transfer.    Order at 7 ("The moving party bears 'the burden of proving by a preponderance of the evidence that transfer is appropriate.'" (quoting *Bank One*, 211 F. Supp. 2d at 812 (citing *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966)))).    The Order did not analyze Google's burden to "clearly establish good cause for transfer based on convenience and justice." *Clarke*, 94 F.4th at 508.    *See generally* Order.    The Order also did not make a finding that Google clearly established good cause for transfer.    *See generally* Order.    Instead, the Order concluded that "the private factors weigh overall in favor of transfer to NDCA" and "the public interest factors slightly favor transfer to NDCA." *Id.* at 18, 21.

Altogether, the Order found that just three of eight factors favored transfer (of those, one factor weighed only "slightly in favor of transfer"); the remaining five factors were either neutral or weighed against transfer.    *See id.* at 8-21.    Of the private-interest factors, the Order concluded that two factors favored transfer, one factor weighed against transfer, and one factor was neutral. *See id.* at 8-18.    The Order found the following: (1) the "relative ease of access to sources of proof" "weighs slightly in favor" of transfer; (2) the "availability of compulsory process to secure the presence of witnesses" was "neutral"; (3) the "cost of attendance for willing witnesses" "weighs . . . significantly in favor of transferring the case"; and (4) the existence of "practical problems that make trial of a case easy, expeditious, and inexpensive" "weighs only slightly against transfer." *Id.* at 7-18.    Of the public-interest factors, the Order concluded that one factor favored transfer, one factor weighed against transfer, and two factors were neutral.    *Id.* at 18-22.    The Order found

the following: (5) the "administrative difficulties flowing from court congestion" "is neutral or, at most, only slightly favors denying transfer"; (6) the "local interests in having localized interests decided at home" "favors transfer"; (7) the "familiarity of the forum with the law that will govern the case" "is neutral"; and (8) the "avoidance of unnecessary problems of conflicts of law" is "neutral." *Id.*

Overall, the Order concluded that, after "balancing both the private interest factors and the public interest factors," "the analysis weighs in favor of transferring this case to NDCA." *Id.* at 22.

## III.    ARGUMENT

### A.    First Objection: the Order's Decision to Transfer the Case Is Contrary to Law Because the Order Applied the Incorrect Legal Standard

The Order's decision to transfer this case to the Northern District of California "must" be set aside under Rule 72(a) because the decision to apply a preponderance of the evidence standard was contrary to law. *See* Order at 7; *Clarke*, 94 F.4th 508 & n.3; *Def. Distributed*, 30 F.4th at 433. Because the correct standard "requires the movant 'clearly [to] demonstrate' that its chosen venue is 'clearly more convenient,'" *Clarke*, 94 F.4th at 508, the Order "fail[ed] to apply" the relevant case law and must be set aside, *see Ingle*, 2025 WL 1182088, at *1; *see also Def. Distributed*, 30 F.4th at 433 ("[T]he standard is not met by showing one forum is more likely than not to be more convenient, but instead the party must adduce evidence and arguments that clearly establish good cause for transfer based on convenience and justice.").

The Order generally determined that three factors weigh in favor of transfer, two factors weigh against transfer, and the remaining three factors are neutral. When the correct legal standard is applied, however, Google falls well short of its burden to "clearly" demonstrate that "a transfer is for the convenience of parties and witnesses, in the interest of justice," and to provide evidence

that "makes it plainly obvious" that gains in convenience "will *actually* materialize in the transferee venue." *Clarke*, 94 F.4th at 508. The Order explained that the private-interest factors (two of which favored transfer) simply "weigh overall in favor of transfer" and that the public-interest factors (only one of which favored transfer) weigh just "slightly favor transfer." Order at 18, 21. Such conclusions are far from a finding of clearly established good cause. *See Clarke*, 94 F.4th at 508 ("Th[e] standard is not met if the movant merely shows that the transferee venue 'is more like than not to be more convenient.'"); *see also Metts v. United States*, No. 3:25-CV-112-L, 2025 WL 1426088, at *5 (N.D. Tex. May 15, 2025) (Lindsay, J.) ("Even if the court were to consider the [transferee district] to be a slightly more convenient forum, Defendant fails to meet the requisite 'clearly more convenient' standard."); *ACQIS*, 2021 WL 4805431, at *8 (finding "three factors in favor versus two factors against" insufficient to "show that transfer is *clearly* more convenient than the venue chosen by the plaintiff").

Given the Order's rulings, when the correct legal standard is applied, Google's motion should be denied for failure to clearly demonstrate that transfer is for the convenience of the parties and witnesses, in the interest of justice. If the Court agrees, it need not consider Plaintiffs' remaining objections. If the Court believes that a clear finding of good cause could nevertheless be found based on the Order's analysis of the public-interest and private-interest factors, however, Plaintiffs respectfully submit that several of the Order's rulings with respect to certain factors were contrary to law or based on clearly erroneous findings.

**B.      Second Objection: the Order's Analysis of the Cost of Attendance for Willing Witnesses Is Contrary to Law and Clearly Erroneous Because the Order Did Not Give Additional Weight to Non-Party Witnesses and Disregarded the Fifth Circuit's 100-Mile Rule**

This private-interest factor "is often regarded as the most important factor to be considered in deciding whether to transfer venue." *TGI Friday's, Inc. v. Great Nw. Rests., Inc.*, 652 F. Supp.

2d 750, 762 (N.D. Tex. 2009) (Fitzwater, J.) (quoting *Sargent v. Sun Tr. Bank, N.A.*, No. 3:03-CV-2701, 2004 WL 1630081, at *3 (N.D. Tex. July 20, 2004)).  Specifically, "it is the convenience of the non-party witnesses that is accorded the greatest weight."  *Id.*; *see also TIG Ins. Co. v. NAFCO Ins. Co.*, 177 F. Supp. 2d 561, 568 (N.D. Tex. 2001) (Sanders, J.) ("Most important in this analysis is the convenience of non-party witnesses. . . . [T]he Court gives less consideration to the convenience of witnesses who are employees of a party, as their testimony can be compelled."); *BNSF Ry. Co. v. OOCL (USA), Inc.*, 667 F. Supp. 2d 703, 711 (N.D. Tex. 2009) (Means, J.) ("The convenience of non-party witnesses is accorded the most weight."); *Canine Caviar Pet Foods v. Pied Piper Pet*, No. 3:09-CV-00677-L, 2009 WL 2568206, at *4 (N.D. Tex. Aug. 19, 2009) (Lindsay, J.) ("The convenience to nonparty witnesses is of particular importance."); *Roco v. Am. Airlines, Inc.*, No. 3:21-cv-2839-L, 2022 WL 658566, at *3 (N.D. Tex. Mar. 4, 2022) ("The convenience of non-party witnesses is accorded the greatest weight, however, while the convenience of employee witnesses of the party seeking transfer is given less weight because the party will be able to compel their testimony at trial.").

In analyzing this factor, the Order states: "the Court finds that the bulk of the relevant witnesses reside in NDCA and thus, this factor favors transfer."  Order at 16.  But the Order did not give additional weight to willing non-party witnesses, as is required under the law.  *TGI Friday's*, 652 F. Supp. 2d at 762; *see* Order at 13-16.  And by focusing on where the "bulk" of willing witnesses reside, the Order disregarded decades of precedent instructing that "less consideration" is to be given to employee witnesses.  *See, e.g.*, *TGI Friday's*, 652 F. Supp. 2d at 762; *TIG*, 177 F. Supp. 2d at 568.  Google identified zero non-party witnesses located in the Northern District of California with respect to this factor.  *See* Transfer Mot. (Dkt. 238-1) at 16 (identifying 10 Google employees).  The only non-party witnesses either party identified as willing

to testify are affiliated with Patent Platform Services in Frisco, Texas.  *See* Transfer Mot. at 17 n.12 ("Since Ms. Kumar, Mr. Riley, and Mr. Seaman from Patent Platform Services are interested parties, they 'presumably will testify willingly' and will not require the court's subpoena power to compel them.").  Ms. Kumar, in particular, resides in Aubrey, Texas.  Order at 18.

Rather than accord additional weight to these non-party witnesses and give less weight to Google's employee witnesses, however, the Order appears to have actually discounted the convenience to non-party witnesses because they are "located in the Eastern District of Texas." *Id.* at 15.  That analysis disregards the Fifth Circuit's "100-mile" rule, which provides that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."  *Volkswagen II*, 545 F.3d at 317 (citation omitted).  Frisco (the location of Patent Platform Services) and Aubrey (where Ms. Kumar resides) are both less than 50 miles from Dallas.  The Bay Area, by contrast, is more than 1,500 miles away from Dallas. The factor of inconvenience to the non-party witnesses thus increases massively, and changes the ability of those witnesses to travel from the office to the courthouse by car as opposed to by plane.

Accordingly, the Order's decision that this factor weighs "significantly in favor of transferring the case to NDCA" was contrary to law because it disregarded the relevant case law instructing that less weight should have been given to Google's employees, and clearly erroneous because more weight should have been given to the non-party witnesses who can easily commute to Dallas from Patent Platform Services' office.

C.    **Third Objection: the Order's Conclusion that the Practical Problems that Make Trial of a Case Easy, Expeditious, and Inexpensive "Weighs Only Slightly Against Transfer" Is Contrary to Law and Clearly Erroneous Because Google Was Required to Act with Reasonable Promptness**

The Order determined that Google's delay of more than three years, including over a year of active litigation, "weighs only slightly against transfer" in light of the current case schedule. Order at 17-18.  That determination was contrary to law and clearly erroneous.  This factor significantly weighs against transfer, and indeed should be dispositive of Google's motion.

The law in this Circuit is clear that "parties who seek a transfer ***must*** act with reasonable promptness." *Chamber of Com.*, 105 F.4th at 307 n.50 (5th Cir. 2024) (emphasis added); *see also Salem Radio*, 114 F. Supp. 2d at 558 ("[M]otions for change of venue must be filed with 'reasonable promptness.'" (quoting *Peteet*, 868 F.2d at 1436)).  "A party's delay in filing a motion to transfer venue" can "serve as the sole basis for the denial of transfer."  *Wilson*, 2021 WL 12289114, at *3 ("Here, over a year elapsed from the filing of the Original Complaint in January 2020, to the time when Defendants moved to transfer on February 15, 2021.  In addition, Defendants represented to the Court in June 2020 that they intended to seek transfer, but did not file their Motion for eight months.  Defendants give no explanation for this delay.").  There is no exception due to the lack of a case schedule.

Google delayed years in bringing its transfer motion.  This case was filed on January 10, 2022, and counsel for Google appeared on January 21, 2022.  *See* Compl. (Dkt. 1); 1/21/22 Not. of Appearance (Dkt. 12).  Google represented to the Court on April 19, 2022 that it was "investigating whether it will pursue a challenge to venue."  ICMR (Dkt. 41) at 3.  After Google made that representation, more than six months of active litigation went by before this case was stayed; no transfer motion was filed.  *See* Order Granting Stay (Dkt. 179).  The stay was lifted on December 2, 2024.  *See* Order Lifting Stay (Dkt. 203).  But nearly three additional months went

by before Google finally filed a motion to transfer, and the motion came only after Judge Scholer indicated at a Rule 26 conference that *Valtrus I* and *Valtrus II* should proceed before this Court.

Google's delay is inexcusable.  But the Order excused Google's delay—contrary to published case law from the Fifth Circuit and this District mandating that parties seeking transfer "must" act with reasonable promptness—due to factors outside of Plaintiffs' control.  The great weight of the evidence clearly established that Google had no good reason to bring its motion after more than a year of active litigation and the production of over 120,000 pages of documents during discovery.  Appendix (Dkt. 267-3) at ECF 15, ¶ 65.  This factor strongly disfavors transfer, and under the law of this District, can "serve as the sole basis for the denial of transfer."  *Wilson*, 2021 WL 12289114, at *3.

>    **D.**    **Fourth Objection: the Order's Analysis of the Local Interest in Having Localized Interests Decided at Home Is Contrary to Law and Clearly Erroneous Because the Northern District of Texas, Not the Northern District of California, Is "the Place of the Alleged Wrong"**

The Order determined that the second public-interest factor, the local interest in having localized interests decided at home, "favors transfer" because one asserted patent and several pieces of prior art were "developed in NDCA," "the Google employees who were involved in developing the accused products reside in NDCA," and "much of the accused technology was developed by NDCA residents in the NDCA."  Order at 20-21.  But "the place of the alleged wrong is one of the most important factors in venue determinations," *TikTok*, 85 F.4th at 364 (quoting *Def. Distributed*, 30 F.4th at 435), and none of the reasons the Order listed concern the place where the alleged wrong—that is, Google's patent infringement—actually occurs: inside of Google's data centers.  One such data center is in this District.  No such data centers are in the Northern District of California.  *See* Appendix at App. 177.

Non-party citizens have a strong interest in remedying patent infringement carried out in their District.  "[A]n action for patent infringement sounds in tort," *Golden v. United States*, 955 F.3d 981, 989 n.6 (Fed. Cir. 2020), and in this case, the tortious conduct occurs inside of Google's data centers, which it has invested billions into building in this District.  *See* Appendix at App. 170 ("Google to invest \$1bn expanding Dallas data centers"); *id.* at App. 168 ("Google invests \$600 million to open our first Texas data center in Midlothian" and "announces another \$600 million investment to build a second Texas data center in Red Oak").  The Order emphasized that this "lawsuit calls into question the work and reputation of several individuals residing in NDCA," but took no consideration of the "hundreds of local people" in Ellis County who maintain the data centers powering the accused products in this case—Google Cloud and Google Search—and practicing the asserted patents' inventions.  Order at 20; Appendix at App. 167.

Because the Order gave minimal weight to "one of the most important factors," its conclusion that this factor favors transfer is contrary to law.  *See TikTok*, 85 F.4th at 364. Furthermore, the Order's findings are clearly erroneous because the Order did not give due weight to the billions Google has invested turning this District into a hotspot of data center activity and the hundreds of local people it employs to maintain the machines that give rise to the infringement at issue in this lawsuit.

### E. Fifth Objection: the Order's Analysis of the Relative Ease of Access to Sources of Proof Is Contrary to Law and Clearly Erroneous Because Google Failed to Cite Evidence that the Northern District Of Texas "Lacks Any Evidence Relating to the Case," and the Evidence Showed the Contrary

The Order determined that the relative ease of access to sources of proof weighed "slightly in favor of transfer" due to "the likely custodians' residence in NDCA."  Order at 10.  In making this determination, the Order held that "this factor weighs in favor of transfer where the current district lacks any evidence relating to the case," and apparently found that no evidence relating to

the case exists in the current district. *See* Order at 8-10. This is clearly erroneous because Google failed to show that the Northern District of Texas "lacks any evidence relating to the case." *See* Transfer Mot. at 21-23. Indeed, Google conceded that "under Fifth Circuit precedent, the physical location of electronic documents does affect the outcome of this factor" and acknowledged that "documents stored in the cloud may be hosted on Google data centers . . . including in Midlothian." *Id.* at 21-22 (citing *Volkswagen II*, 545 F.3d at 316).

The Order nevertheless found that this factor slightly favored transfer due to the presence of "the likely custodians' residence in NDCA," Order at 10, but the Order did not consider Plaintiffs' evidence—from Google—that "95% of [Google's] software developers worldwide," that is, "more than 25,000 Google software developers from dozens of offices," "can browse and edit files anywhere across" Google's monolithic source code repository. Appendix at App. 217-18, 220, 225 ("[M]ost Google code is available to all Google developers[.]"); *id.* at App. 225 ("Access to the whole codebase encourages extensive code sharing and reuse."). Plaintiffs also provided evidence that Google has an office in the Northern District of Texas and employs software developers and managers in this District, and those employees thus could access those files, including the company's "entire" software repository. *See* Appendix at App. 174 ("Google has proudly called Texas home for over 15 years with offices in Austin and Dallas and a data center in Midlothian."); *id.* at App. 189 ("Google is proud to have roots in Texas, where over 2,400 Googlers . . . support millions of Texas businesses. . . . Today, we're excited to expand our presence in Texas with the launch of our newest Google Cloud region in Dallas[.]"); *id.* at App. at 264 (Dallas-based Software Engineering Manager at Google); *id.* at App. 276 (Dallas-based Product Manager at Google); *id.* at App. 283 (Dallas-based Senior Solutions Engineer at Google). Indeed, Google acknowledged that "Valtrus can find some" Google employees in Texas who "work on

Google cloud and Google Search." Transfer Reply (Dkt. 275) at 2. Simply put, there is no increased efficiency or relative ease of access to this information—which is physically stored in data centers such as Midlothian—in Northern California. Google purposefully developed its massive software repository so that "[t]eam boundaries are fluid" and "more than 25,000 Google software developers from dozens of offices," including its Dallas office, can access "the entire Piper codebase." Appendix at App. 218, 220, 223. In other words, Google cannot show that it is "plainly obvious" that gains in convenience will "*actually* materialize in the transferee venue." *Clarke*, 94 F.4th at 508.

The law is clear that this factor must be heavily discounted where "the vast majority of the evidence [is] electronic, and therefore equally accessible in either forum." Order at 9 (quoting *Planned Parenthood*, 52 F.4th at 630). Here, the evidence is equally accessible in either forum, and Google failed to provide evidence that the Northern District of Texas lacks any evidence relating to the case. And the Order's findings with respect to this factor were clearly erroneous, as Google's own admissions and evidence established that the electronic documents are physically stored in the Midlothian data center and equally accessible to Google employees who work out of Google's Dallas office. Google failed to identify a single relevant document or line of source code inaccessible to its employees in this District. *See generally* Transfer Mot.; Transfer Reply. Google thus failed to meet its burden to show that this factor even slightly favors transfer to the Northern District of California. And because the relevant electronic documents are "equally accessible" in Google's Dallas and Northern California Offices, *TikTok*, 85 F.4th 352 (quoting *Planned Parenthood*, 52 F.4th at 630), this factor weighs in favor of denying transfer because at least some of the electronic documents are actually stored in Midlothian, but none are stored in Northern California, where Google has no data centers, *see Volkswagen II*, 545 F.3d at 316; *see also* Transfer

Mot. at 21 ("[U]nder Fifth Circuit precedent, the physical location of electronic documents does affect the outcome of this factor[.]").

## IV.    **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court set aside the Magistrate Judge's ruling on Google's motion to transfer and order that this case remain in the Northern District of Texas.  Even if the Order's analysis of each of the public-interest and private-interest factors were not clearly erroneous or contrary to law, Google's motion fails when the correct legal standard is applied.

Dated:  August 6, 2025

Respectfully submitted,

By: _____/s/ Greg Love_____

Greg Love (SBN 24013060)
Hon. Paul D. Stickney (Ret.) (SBN 00789924)
**STECKLER WAYNE & LOVE PLLC**
12720 Hillcrest Road, Suite 1045
Dallas, Texas 75230
Telephone: (972) 387-4040
E-mail:  greg@stecklerlaw.com
E-mail:  judgestickney@stecklerlaw.com

Jason Sheasby (admitted *pro hac vice*)
Amy E. Proctor (admitted *pro hac vice*)
Andrew J. Strabone (admitted *pro hac vice*)
Connor He-Schaefer (admitted *pro hac vice*)
Erick Franklund (admitted *pro hac vice*)
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Stars, Suite 900
Los Angeles, California 90067
Telephone: (310) 277-1010
E-mail:  jsheasby@irell.com
E-mail:  aproctor@irell.com
E-mail:  astrabone@irell.com
E-mail:  che-schaefer@irell.com
E-mail:  efranklund@irell.com

**COUNSEL FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on August 6, 2025.

_____ /s/ *Erick Franklund* _____