UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

VALTRUS INNOVATIONS, LTD.,

Plaintiff,

v.

GOOGLE LLC,

Defendant.

Case No. 25-cv-07063-PCP

**ORDER DISMISSING CONSOLIDATED CASES**

Re: Dkt. Nos. 208, 236, 239, 319, 320, 321, 323, 325, 329

This patent-infringement dispute includes two consolidated cases ("*Valtrus I*" and "*Valtrus II*") that were transferred to this Court from the Northern District of Texas. In both cases, plaintiffs Valtrus Innovations, Ltd. and Key Patent Innovations Ltd. allege that defendant Google LLC infringed six patents that plaintiffs acquired from Hewlett Packard Enterprise Development, LP and Hewlett Packard Enterprise Company (together, "HPE"). Now before the Court are (1) Google's motion to dismiss *Valtrus I* for lack of constitutional or statutory standing; (2) Valtrus's motion for leave to amend its complaint in *Valtrus I* to cure any statutory standing deficiency; (3) Google's motion to dismiss *Valtrus I* on the merits; (4) Google's motion to supplement the claim-construction briefing in *Valtrus I* to account for subsequent developments; and (5) Google's motion to dismiss *Valtrus II* based on the rule against claim-splitting. The parties have also filed administrative motions to seal various document submitted in connection with the above-listed motions. For the reasons below, the Court grants Google's motion to dismiss *Valtrus I* for lack of constitutional standing, grants Google's motion to dismiss *Valtrus II* based on claim-splitting, grants Valtrus's sealing request, and denies the remaining motions as moot.

United States District Court
Northern District of California

**BACKGROUND**

Valtrus Innovations Ltd. is a wholly owned subsidiary of Key Patent. In 2021, Valtrus entered into a patent-purchase agreement with HPE to acquire a patent portfolio, which included U.S. Patent Nos. 6,728,704 ("'704 patent"), 6,738,764 ("'764 patent"), 6,816,809 ("'809 patent"), 7,346,604 ("'604 patent"), 7,523,454 ("'454 patent"), and 7,748,005 ("'005 patent"). On the same day that Valtrus executed the patent-purchase agreement, it executed a declaration of trust with Key Patent. The declaration provided that Valtrus would hold certain intellectual property, including the patents listed above, in trust for Key Patent's benefit. While Valtrus holds title to the patents, the declaration provides Key Patent with substantial authority over the alienation, enforcement, and monetization of the patents.

In January 2022, Valtrus filed *Valtrus I* against Google in the Northern District of Texas, asserting claims for infringement of the '704, '764, '809, '604, '454, and '005 patents. In March 2022, Google moved to dismiss the claims involving the '704, '604, '764, and '809 patents under 35 U.S.C. § 101 and for failure to state a claim for infringement of the '809 patent. The Texas district court never ruled on that motion.

Google then filed petitions for *inter partes* review of every asserted patent except the '604 patent, and the Texas district court granted Google's motion to stay the matter pending those IPR proceedings in November 2022. The Patent Trial and Appeal Board ultimately found that the '764, '005, and '454 patents encompass unpatentable subjects. Valtrus did not challenge that determination and has since abandoned its claims related to those patents in this action. The PTAB upheld the validity of the '704 patent in full; confirmed claims 2–5, 11, and 13–17 of the '809 patent; and rejected claims 1, 6–10, and 12 of the '809 patent.

While *Valtrus I* was stayed, Valtrus filed another patent-infringement case against Google ("*Valtrus II*") in the Northern District of Texas in July 2024. In *Valtrus II*, Valtrus asserted claims for infringement of the '704, '604, and '809 patents nearly identical to those asserted in *Valtrus I*. The primary difference was that, in *Valtrus II*, Valtrus included Key Patent as a co-plaintiff.

As Valtrus has since explained, it filed *Valtrus II* based on orders in two other cases. *See Valtrus Innovations Ltd. v. SAP Am., Inc.*, No. 2:24-cv-00021 (E.D. Tex. Nov. 8, 2024), Dkt. No.

83; *Pictiva Displays Int'l Ltd. v. Samsung Elecs. Co., Ltd.*, No. 2:23-cv-00495 (E.D. Tex. Dec. 11, 2024), Dkt. No. 128. In each case, as here, Valtrus or another Key Patent subsidiary had asserted claims for infringement of patents held in trust for Key Patent. Defendants in both cases moved to dismiss on the ground that Valtrus or another subsidiary lacked constitutional or statutory standing to assert the patents. And in each case, the court concluded that there was constitutional standing but that neither Valtrus nor the other subsidiary had statutory standing under 35 U.S.C. § 281 because they did not have "all substantial rights" in the asserted patents. *See Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1231 (Fed. Cir. 2019). The court determined in both cases that Key Patent had statutory standing and "must be joined as a plaintiff … under Rule 19 and Federal Circuit precedent." *See Valtrus*, No. 2:24-cv-00021 (E.D. Tex. Nov. 8, 2024), Dkt. No. 83, at 12–15; *Pictiva Displays*, No. 2:23-cv-00495 (E.D. Tex. Dec. 11, 2024), Dkt. No. 128, at 8–12. In the wake of these decisions, Valtrus filed *Valtrus II* with Key Patent as a co-plaintiff "out of an abundance of caution and to preserve all rights" in case the Texas district court concluded that Valtrus lacked constitutional or statutory standing in *Valtrus I*. *See* Complaint, Dkt. No. 1, *Valtrus II*, No. 3:24-cv-01795 (N.D. Tex. July 12, 2024).

At Valtrus's request, the Texas district court lifted the stay in *Valtrus I* in December 2024. The case was then transferred to a different judge. Almost immediately thereafter, Google filed a motion to dismiss *Valtrus II* based on the rule against claim splitting.[1] Google argued that *Valtrus II* was improperly duplicative of *Valtrus I*. The following week, Valtrus responded by filing both (1) a motion to consolidate *Valtrus I* and *II* and (2) a motion to amend its complaint in *Valtrus I* to add Key Patent as a co-plaintiff. Valtrus later withdrew its motion to consolidate. But in March 2025, the Texas district court *sua sponte* consolidated *Valtrus I* and *II* "[b]ecause of common questions of fact and law, and in the interest of judicial economy, pursuant to Federal Rule of Civil Procedure 42(a)." Both actions were then consolidated under *Valtrus I*'s case number and caption, and *Valtrus II* was administratively closed. The consolidation order said nothing

---

[1] Google filed its initial motion to dismiss the original complaint in *Valtrus II* in December 2024. After Valtrus amended the complaint, Google renewed its motion to dismiss in January 2025. That is the motion now pending before this Court.

regarding Google's pending motion to dismiss *Valtrus II*. Following consolidation, Google filed a reply in support of its motion to dismiss *Valtrus II* on the consolidated docket, arguing that the motion was still live.

In February 2025, Google re-noticed its initial motion to dismiss *Valtrus I*, which the Texas district court had never decided and had apparently assumed was moot. As already described, the motion argued that the '704, '604, and '809 patents were not directed to patentable subject matter under 35 U.S.C. § 101 and that the complaint did not plausibly allege infringement of the '809 patent. That same month, Google filed a motion to transfer the case to this district. Google also filed a motion for leave to supplement the parties' claim-construction briefing, which had been completed in October 2022 before the IPR proceedings and stay, to address evidence from the IPR proceedings.

The Texas district court transferred this case to the Northern District of California in August 2025. The Texas district court left several motions unresolved at the time of the transfer, including (1) Google's motion to dismiss *Valtrus I* on the merits, (2) Valtrus's motion to amend its complaint in *Valtrus I*, (3) Google's motion to dismiss *Valtrus II* based on claim-splitting, and (4) Google's motion to supplement the claim-construction briefing in *Valtrus I*. The parties have since re-noticed each of those motions, all of which are opposed.

Following the transfer, Google filed a second motion to dismiss *Valtrus I* arguing that Valtrus lacks constitutional or statutory standing to assert the patents at issue and that the constitutional standing issue is not curable by joining Key Patent. The Court heard that motion, along with the four renoticed motions listed above, on December 18, 2025.

## DISCUSSION

As detailed above, the parties ask the Court to resolve five pending motions. Because Valtrus lacked constitutional standing when it filed its complaint in *Valtrus I*, and because that jurisdictional deficiency is incurable, the Court grants Google's motion to dismiss *Valtrus I* without leave to amend [Dkt. No. 321]. The Court therefore denies as moot Valtrus's motion for leave to amend its complaint in *Valtrus I* [Dkt. No. 208-2], Google's motion to dismiss *Valtrus I* on the merits [Dkt. No. 236], and Google's motion to supplement the claim-construction briefing

4

in *Valtrus I* [Dkt. No. 239]. Because the Texas district court did not resolve Google's motion to dismiss *Valtrus II*, and because the filing of that case violates the rule against claim splitting, the Court also grants Google's motion to dismiss *Valtrus II* [Dkt. No. 53 in that case]. Finally, the Court grants Valtrus's request to redact certain materials filed in support of Google's motion to dismiss *Valtrus I* [Dkt. No. 325].

## I.    *Valtrus I* is dismissed for lack of constitutional standing.

Google moves to dismiss *Valtrus I* on the ground that Valtrus lacks both constitutional standing and statutory standing under 35 U.S.C. § 281. Statutory standing under § 281 is not jurisdictional, and any deficiency may be cured by amendment. But a patentee's lack of constitutional standing at the time it initiates an infringement action is an incurable jurisdictional defect. *See Intell. Tech LLC v. Zebra Techs. Corp.*, 101 F.4th 807, 817 (Fed. Cir. 2024); *see also Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364 (Fed. Cir. 2010) ("A court may exercise jurisdiction only if a plaintiff has standing to sue on the date it files suit."). Because the Court concludes that Valtrus lacks constitutional standing, it grants Google's motion to dismiss *Valtrus I* without leave to amend.

"[T]he touchstone of constitutional standing in a patent infringement suit is whether a party can establish that it has an exclusionary right in a patent that, if violated by another, would cause the party holding the exclusionary right to suffer legal injury." *Univ. of S. Fla. Rsch. Found., Inc. v. Fujifilm Med. Sys. U.S.A., Inc.*, 19 F.4th 1315, 1323 (Fed. Cir. 2021) (quoting *WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1263 (Fed. Cir. 2010)); *see also Intell. Tech LLC v. Zebra Techs. Corp.*, 101 F.4th 807, 814 (Fed. Cir.), *cert. denied*, 145 S. Ct. 568 (2024) ("[T]he question for the injury-in-fact threshold is whether a party has *an* exclusionary right." (emphasis in original)). The Federal Circuit has never "enumerate[d] the exclusionary rights afforded by a patent or fully define[d] their scope," *Intell. Tech*, 101 F.4th at 816, but it has explained that such rights include "the exclusive right to make, use, and sell products or services under the patent," the right to grant licenses or sublicenses, the right to "supervise and control" licensees, the right "to receive a portion of the recovery in infringement suits," and the "right to assign … interests in the patent," *Alfred E. Mann Found. For Sci. Rsch. v. Cochlear Corp.*, 604 F.3d 1354, 1360–61 (Fed.

United States District Court
Northern District of California

Cir. 2010). Critically, the Federal Circuit has made clear that the "right to sue parties … for patent infringement" is not, on its own, an exclusionary right that gives rise to constitutional standing. *See Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1341–43 (Fed. Cir. 2007) (collecting cases). As the Federal Circuit explained in *Morrow*, that is because the existence of an injury-in-fact in patent cases "depends entirely on the putative plaintiff's proprietary interest in the patent," such as the right to grant licenses. *Id.* (quoting *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005)). In other words, a patent plaintiff "must have beneficial ownership of some … proprietary rights" in order to have standing, not just a legal right to sue. *Id.* (quoting *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1381 (Fed. Cir. 2000)).

Here, Valtrus has at most a bare right to sue without any other proprietary or beneficiary interest in the asserted patents. As all parties agree, Valtrus obtained full ownership of the asserted patents from HPE when it executed the patent-purchase agreement. And as "[a] patent owner," Valtrus "ha[d] exclusionary rights as a baseline matter unless it … transferred all exclusionary rights away." *Intell. Tech*, 101 F.4th at 816.

Valtrus did just that. On the same day that it acquired its ownership interest in the asserted patents from HPE, Valtrus executed a declaration of trust that transferred all of its exclusionary rights in the asserted patents to Key Patent. While Valtrus retained technical legal title, the declaration provides Key Patent with functionally exclusive authority over the alienation, enforcement, and monetization of the asserted patents. For example, it provides that:

- "In the event that the Trustee becomes aware that: … any unlicensed activities are carried on by any third party which constitutes or could constitute an infringement of the Intellectual Property, the Trustee shall immediately notify the Beneficiary and the *Beneficiary shall have the right, but shall not be obligated, to take action or bring an infringement action or other proceeding with respect to such matter at its own expense, in its own name and entirely under its own direction and control or settle any such action, proceeding or dispute.*"

- "For the avoidance of doubt, the *full economic interests and monetization rights in the Intellectual Property shall at all times be owned by and belong to the Beneficiary* and the Trustee shall at all times hold the Intellectual Property on behalf, and to the order, of the Beneficiary as beneficial owner of the Intellectual Property."

- "The Trustee shall establish a bank account for the purpose of receiving

6

any licence revenues, royalties or other forms of income from the monetization of the Intellectual Property (the 'Payment Account'). *The Beneficiary shall have exclusive control and sole right of withdrawal with respect to the Payment Account* for the purpose of making deposits in and withdrawals from the Payment Account in accordance with its rights and obligations under this Declaration. All monies and other property deposited or held from time to time in the Payment *Account shall be held by the Trustee in the Payment Account for the exclusive benefit and on behalf of the Beneficiary*."

- "The Trustee shall provide the services hereunder exclusively to the Beneficiary and the *Trustee shall not provide any services or enter into any transactions in relation to the Intellectual Property or otherwise, other than as approved by the Beneficiary*."

- "The *Trustee shall not without the approval of the Beneficiary*: … (b) sell, assign, transfer, exchange, mortgage, pledge, licence or otherwise dispose of any of the Intellectual Property or interests therein, except as expressly provided by the Declaration[;] … (d) take or consent to any action that would result in the placement of a lien or other form of encumbrance on any of the Intellectual Property; … (f) take or consent to any action that would cause the Intellectual Property to be treated as other than the property of the Beneficiary."

- "The Trustee shall act as agent for the Beneficiary in relation to any licensing services undertaken in relation to the Intellectual Property and *shall not deal in or carry out any licensing actions in relation to such Intellectual Property other than on the express instructions of the Beneficiary*."

- "Notwithstanding anything to the contrary in the Declaration, *the Beneficiary shall at all times have the unfettered right to licence all or part of the Intellectual Property to third parties licensees without requiring the consent of the Trustee* and any such licences entered into *by the Beneficiary* shall be notified to the Trustee and be *binding on the Trustee*."

- "Any litigation, legal action, enforcement proceedings or other form of administrative procedure involving the Intellectual Property or any part thereof ('Litigation') shall be conducted *at the direction of the Beneficiary* and the *Trustee shall comply at all times with the instructions of the Beneficiary* in respect thereof."

- "The Trustee may, *at the direction of the Beneficiary*, divest of, sell, assign, lease, licence, loan or otherwise dispose of the Intellectual Property or any part thereof ("Divestiture") and any such Divestiture may be made in any manner and in favour of any person or entity *at all times in accordance with the instructions of the Beneficiary*."

Accordingly, under the declaration of trust, Valtrus had no independent right to license, monetize, or even sue for infringement of the asserted patents except as authorized and directed by

7

Key Patent. Valtrus nonetheless contends that it retained several exclusionary rights despite the sweeping transfer of exclusionary rights effected by the declaration. Its arguments fail.

First, Valtrus contends that Key Patent authorized this suit against Google, giving Valtrus at least a right to sue in this action. Indeed, a court in the Eastern District of Texas court found under nearly identical circumstances that Key Patent's authorization of Valtrus's lawsuit against another alleged infringer conferred at least a right to sue, if no other right. *See Valtrus*, No. 2:24-cv-00021 (E.D. Tex. Nov. 8, 2024), Dkt. No. 83 at 8. But the conclusion that such a bare right to sue amounts to an exclusionary right sufficient to support constitutional standing is squarely foreclosed by *Morrow*. *See* 499 F.3d at 1341–43.

Second, Valtrus contends that it retained some right to make, use, and sell the inventions covered by the asserted patents. But these Valtrus rights are not exclusionary. Exclusionary rights are those that "involve the ability to exclude *others* from practicing an invention or to forgive activities that would normally be prohibited under the patent statutes." *Lone Star*, 925 F.3d at 1234 (citation modified). The Federal Circuit has thus held that only "the *exclusive* right to make, use, and sell products or services under the patent" is sufficiently exclusionary to confer constitutional standing. *Mann*, 604 F.3d at 1360. For that reason, licensees without exclusive use rights do not have standing to sue for patent infringement. *See WiAV Sols.*, 631 F.3d at 1265. Valtrus has not argued that it has exclusive use rights. And the declaration of trust suggests otherwise, as it gives Key Patent an unfettered right to license the asserted patents to third parties without Valtrus's consent.

Third, Valtrus argues that it retained a right to license the asserted patents. But Valtrus expressly concedes that its licensing authority under the declaration of trust is contingent on Key Patent "declin[ing] to … engage in licensing activities." And the declaration of trust prohibits Valtrus from carrying out licensing activities without Key Patent's express authorization Key Patent, so Valtrus has no independent right to license the asserted patents. While some evidence suggests that Key Patent authorized Valtrus to file this action, giving it a limited right to sue, nothing in the record shows any similar authorization for Valtrus to engage in licensing activities.

In sum, because it had already transferred all exclusionary rights in the asserted patents to

Key Patent under the declaration of trust at the time it filed suit, Valtrus had no injury in fact and lacked standing when it initiated this action.

Perhaps recognizing that it had no exclusionary right under longstanding Federal Circuit caselaw, Valtrus makes several arguments that those cases no longer apply. Valtrus argues, for example, that the Supreme Court's 2014 decision in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), abrogated earlier Federal Circuit cases requiring patent plaintiffs to show exclusionary rights in order to establish constitutional standing. But as the Federal Circuit explained in *Lone Star*, *Lexmark* merely "clarified that so-called 'statutory standing' defects do not implicate a court's subject-matter jurisdiction" under Article III—i.e., that a plaintiff's constitutional standing does not turn on whether it satisfies statutory prerequisites to sue. *See* 925 F.3d at 1235 (citing *Lexmark*, 572 U.S. at 128 n.4). *Lone Star* therefore held that *Lexmark* was "irreconcilable with [the Federal Circuit's] earlier authority treating [35 U.S.C.] § 281 as a jurisdictional requirement." *Id.* In the wake of *Lexmark* and *Lone Star*, a patent plaintiff can establish standing even where it does not retain "*all* substantial rights" in a patent, as required by § 281. But the Federal Circuit continues to recognize that a patent plaintiff must still show "that it has *an* exclusionary right in a patent" to establish constitutional standing. *See Univ. of S. Fla. Rsch. Found.*, 19 F.4th at 1323 (quoting *WiAV Sols.*, 631 F.3d at 1265); *see also Recor Med., Inc. v. Medtronic Ireland Mfg. Unlimited Co.*, No. 22-CV-03072-TLT, 2025 WL 2272414, at *7 (N.D. Cal. July 7, 2025) (continuing to follow the exclusionary-rights requirement for constitutional standing and explaining that only one district court decision has suggested that it no longer applies).[2] As explained above, Valtrus has none.

---

[2] The Federal Circuit's decision in *Schwendimann v. Arkwright Advanced Coating, Inc.* is not to the contrary. *See* 959 F.3d 1065 (Fed. Cir. 2020). There, an original patentee made a failed attempt to assign the asserted patent to the plaintiff. *Id.* at 1069. Unwittingly relying on that defective assignment, the plaintiff sued the defendant for infringement of the patent. *Id.* at 1070. After the defendant moved to dismiss for lack of standing, the original patentee and the plaintiff executed a second (and effective) assignment agreement. *Id.* at 1070–71. The district court determined that the second agreement operated retroactively to reform and cure the defective original assignment under state law. *Id.* at 1073–74. As a result, the district court concluded that plaintiff held legal title and exclusionary rights to the patent—and therefore had standing—at the time she filed her complaint. *Id.* On appeal after a jury trial, the Federal Circuit agreed that "a district court's reformation of a contract" under state law "to properly reflect a valid, pre-existing transfer agreement" may retroactively cure a patent plaintiff's lack of ownership and exclusionary rights at

9

United States District Court
Northern District of California

Next, Valtrus argues that the Federal Circuit's post-*Lexmark* cases have at least abrogated *Morrow*'s holding that a bare right to sue is not an exclusionary right and does not confer constitutional standing. Quite the opposite: *Lone Star* directly cited *Morrow* as an example of a pre-*Lexmark* case that properly distinguished between statutory and constitutional standing. And *Lone Star* reaffirmed *Morrow*'s holding that patent plaintiffs have constitutional standing only if they have "'exclusionary rights' [that] involve the ability to exclude others from practicing an invention or to 'forgive activities that would normally be prohibited under the patent statutes.'" *See Lone Star*, 925 F.3d at 1234–35 (quoting *Morrow*, 499 F.3d at 1342). *Lone Star* never disputed *Morrow*'s conclusion that a bare right to sue is not an exclusionary right for standing purposes. Instead, the *Lone Star* court distinguished the plaintiff before it—who "alleg[ed] that it possesse[d] rights in the asserted patents" under an "assignment of rights," including the right to "collect royalties"—"from the plaintiff in *Morrow*, who lacked the ability to grant licenses or 'forgive' infringement." *Id.* at 1234. If anything, this language in *Lone Star* reaffirms *Morrow*'s holding that a plaintiff lacks standing if it has only a bare right to sue without any right to license, collect royalties for, or forgive infringement of the asserted patents.[3] Accordingly, another court in this district recently held that a patent plaintiff had no exclusionary rights and lacked standing where, as here, it had only a bare right to sue. *See Recor*, 2025 WL 2272414, at *4; *cf. Spokeo,*

the outset of a case. *See id.* at 1074.

  *Schwendimann*'s narrow holding suggests nothing about Valtrus's standing in this action, which involves no such defective transfer or reformation thereof. Valtrus latches onto language suggesting that a patent plaintiff may establish constitutional standing merely by alleging "that she is the owner by assignment of the … patent and [defendant] infringed that patent." *Id.* at 1071. As another court in this district has explained, however, "when read in context, that sentence merely explains that … [statutory] patentee status under section 281 … is not related to Article III standing." *Uniloc 2017 LLC v. Google LLC*, 508 F. Supp. 3d 556, 568 n.12 (N.D. Cal. 2020), *rev'd on other grounds,* 52 F.4th 1352 (Fed. Cir. 2022). For that reason, the Federal Circuit's more recent cases citing *Schwendimann* continue to hold that "the question for the injury-in-fact threshold is whether a party has an exclusionary right." *Intell. Tech*, 101 F.4th at 814 (emphasis removed) (quoting *Univ. of S. Fla. Rsch. Found.*, 19 F.4th at 1323).

[3] At the hearing, Valtrus argued that it has a right to forgive Google's alleged infringement of the asserted patents, as it could have chosen not to sue and could settle or abandon its suit at any time. But that is true of nearly every entity with a right to sue. Were the Court to treat the right not to sue or to settle a suit as an exclusionary right, it would effectively undo the Federal Circuit's long-established rule that a bare right to sue does not confer standing.

*Inc. v. Robins*, 578 U.S. 330, 339 (2016) (holding that a statutory right to sue does not confer constitutional standing).

Valtrus contends that this case is distinguishable from *Morrow* because, in addition to holding a limited right to sue for infringement of the asserted patents as authorized by Key Patent, it holds "legal title" to the asserted patents as a trustee. "But constitutional standing … does not depend on labels; it is the substance of the allegations that matters." *Lone Star*, 925 F.3d at 1234. Valtrus has not explained how bare legal title to the asserted patents, totally divested of a patent owner's usual rights to license the patents or forgive infringement thereof, amounts to "an exclusionary right" that could support standing under Federal Circuit requirements. *See Uniloc USA, Inc. v. Apple, Inc.*, No. C 18-00358 WHA, 2020 WL 7122617, at *7 (N.D. Cal. Dec. 4, 2020) (holding that a plaintiff lacked standing where, "though [it] held title to the [asserted] patent," it granted other entities "an unfettered right in [their] 'sole and absolute discretion' to license the … patent to the world" such that it could not "have had an expectation that others world not practice the … patent and would not have been injured if and when others did so").

Finally, Valtrus contends that even if it lacks standing to sue Google for its own injury, Key Patent indisputably has standing, and Valtrus therefore has representative standing to sue on Key Patent's behalf as a trustee.

Valtrus is correct that trustees generally have standing to sue on behalf of their beneficiaries. In *Sprint Communications Company, L.P. v. APCC Services, Inc.*, the Supreme Court held that assignees of a cause in action who lack their own injury in fact nevertheless have standing to sue to redress assignors' injuries based on historical practices permitting such representative suits. *See* 554 U.S. 269, 285–88 (2008). In doing so, the Court reasoned by analogy to other long-recognized types of representative standing, including "[t]rustees bring[ing] suit to benefit their trusts." *Id.* at 287.

But Valtrus does not have such representative standing. As an initial matter, *Sprint* noted that trustees generally have representative standing because they "have some sort of 'obligation' to the [beneficiaries'] whose interests they vindicate through litigation." *Id.* at 288. That is not the case here: Valtrus has no obligation to sue or vindicate Key Patent's interests in the asserted

11

patents. It has only the *option* to sue, and only upon Key Patent's affirmative authorization.

More importantly, "there are exceptions" to the general rule authorizing representative standing and assignment of causes of action based "on the policy against separating the right to exclude from the right to sue for infringement" of intellectual property. *Mojave Desert Holdings, LLC v. Crocs, Inc.*, 995 F.3d 969, 978 (Fed. Cir. 2021). Based on that policy, "the Supreme Court held [more than a century ago] that the assignment of the right to sue for patent infringement, by itself, does not give the assignee the right to bring suit without joining the patent owner." *Id.* (citing *Crown Die & Tool Co. v. Nye Tool & Machine Works*, 261 U.S. 24, 39–41 (1923)). The Federal Circuit has similarly "recogniz[ed] that patentees cannot award a 'hunting license' to third parties." *Id.* (quoting *Lone Star*, 925 F.3d at 1233–34); *cf. John Wiley & Sons, Inc. v. DRK Photo*, 882 F.3d 394, 410 (2d Cir. 2018) (cited approvingly in *Mojave Desert* and holding that the right to sue for copyright infringement cannot be assigned separately from the copyright owner's exclusive rights). The result is that, in the patent context, an assignment of a right to sue without any attendant transfer of exclusionary right is invalid. *See id.*; *Lone Star*, 925 F.3d at 1233 (Fed. Cir. 2019) ("*Crown Die* suggests to us that the realm of intellectual property law has special characteristics that place it outside of any generally permissive regime for the assignment of federal claims." (quoting *Wiley & Sons*, 882 F.3d at 409)). So even if Key Patent purported to grant Valtrus a right to sue, which Google disputes, that assignment was invalid as a matter of law because Key Patent did not simultaneously grant any exclusionary rights. *Cf. Mojave Desert*, 995 F.3d at 979 (holding that a transfer of a right to appeal from IPR proceedings is valid where it "has been transferred *together* with any liability for past infringement" (emphasis added)).

In short, Valtrus lacked any exclusionary right sufficient to confer constitutional standing at the time it filed its complaint in *Valtrus I*, and it did not have representative standing to sue on Key Patent's behalf. That jurisdictional defect cannot be cured after the fact by joining Key Patent as a party. *See Intell. Tech*, 101 F.4th at 817; *Abraxis*, 625 F.3d at 1364. Accordingly, the Court grants Google's motion to dismiss *Valtrus I* without leave to amend.

## II.    *Valtrus II* is dismissed for improper claim-splitting.

Before the Texas district court consolidated *Valtrus I* and *Valtrus II*, Google moved to

12

dismiss *Valtrus II* based on the rule against claim-splitting. In the Fifth, Ninth, and Federal Circuits, this rule "prohibits a party or parties in privity from simultaneously prosecuting multiple suits involving the same subject matter against the same defendants." *Armadillo Hotel Grp., LLC v. Harris*, 84 F.4th 623, 628 (5th Cir. 2023); *see also Arendi S.A.R.L. v. LG Elecs. Inc.*, 47 F.4th 1380, 1384–86 (Fed. Cir. 2022); *Mendoza v. Amalgamated Transit Union Int'l*, 30 F.4th 879, 886 (9th Cir. 2022). Closely related to claim preclusion, "the bar of claim-splitting is applicable if the second suit involves (1) the same causes of action as the first; and (2) the same parties or their privies." *Mendoza*, 30 F.4th at 886; *see also Arendi*, 47 F.4th at 1384–85; *Armadillo Hotel*, 84 F.4th at 628.[4]

Valtrus does not meaningfully dispute that both elements of claim-splitting are present here. Nor could it—*Valtrus I* and *II* involve identical claims of patent infringement between the same parties. The only difference in *Valtrus II* is the addition of Key Patent, with whom Valtrus is undisputably in privity, as a plaintiff.

Though Valtrus appears to concede that its filing of *Valtrus II* violates the rule against claim-splitting, Valtrus argues that the Court should deny Google's motion to dismiss *Valtrus II* for two reasons. Neither is availing.

First, Valtrus contends that the Texas district court's consolidation of *Valtrus I* and *II* mooted Google's motion to dismiss *Valtrus II*. To be sure, courts sometimes employ consolidation as an alternative remedy to dismissal in instances of claim-splitting, and Valtrus's opposition to Google's motion to dismiss *Valtrus II* requested consolidation in lieu of dismissal. But there is no indication that the Texas district court viewed its consolidation of the cases here as resolving the claim-splitting issue. Its consolidation order made no mention of claim-splitting, duplicative litigation, Google's motion to dismiss *Valtrus II*, or Valtrus's opposition thereto. Instead, the order explained that consolidation was appropriate "[b]ecause of common questions of fact and law, and in the interest of judicial economy." Where district courts use consolidation to remedy claim-

---

[4] This rule is sometimes referred to as the "duplicative litigation doctrine." *See, e.g.*, *Arendi*, 47 F.4th at 1384.

splitting, they say so. *See, e.g.*, *Gamino v. SPCP Grp., LLC*, No. 5:21-CV-01466, 2022 WL 336469, at *3 (C.D. Cal. Feb. 2, 2022) (explaining that the court's decision "to consolidate both actions … obviate[ed] the claim-splitting concern"); *Janvey v. Willis of Colo. Inc.*, No. 3:13-cv-3980, 2014 WL 12670763, at *7 (N.D. Tex. Dec. 5, 2014) (expressly noting that the Court "f[ound] the consolidation sufficient … and decline[d] to dismiss the action on that ground"). Absent any statement or other evidence to that effect, the Court cannot conclude that the Texas district court viewed consolidation as having resolved the claim-splitting issue. Google's motion to dismiss *Valtrus II* therefore is not moot.

Second, Valtrus argues that dismissal is not a necessary or appropriate remedy. In cases of claim-splitting, a district court may, "[a]fter weighing the equities of the case … exercise its discretion to dismiss a duplicative later-filed action, to stay that action pending resolution of the previously filed action, to enjoin the parties from proceeding with it, or to consolidate both actions." *Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007), *overruled on other grounds by Taylor v. Sturgell*, 553 U.S. 880, 904 (2008). Valtrus contends that the most severe of these remedies, dismissal, is proper only when a plaintiff files a duplicative action for the purpose of circumventing adverse rulings in the earlier-filed litigation. Even if that is true, those circumstances are present here. The record is clear that Valtrus and Key Patent feared that *Valtrus I* would be dismissed for lack of standing and, rather than waiting to refile after such a dismissal, they filed *Valtrus II* to preserve a longer damages period. Most tellingly, the original complaint in *Valtrus II* was filed shortly after defendants in other cases began arguing that Valtrus and a similarly situated Key Patent subsidiary lacked constitutional and statutory standing to sue for infringement of patents of which Key Patent is the beneficial owner. Indeed, the original complaint admitted that Valtrus and Key Patent were filing *Valtrus II* "out of an abundance of caution and to preserve all rights" in the wake of those decisions. All signs thus suggest that Valtrus and Key Patent filed *Valtrus II* to circumvent the impending dismissal of *Valtrus I* for lack of standing.

Allowing *Valtrus II* to proceed would therefore enable Valtrus to reap the very reward that motivated its impermissible claim-splitting. It would also force Google to continue litigating the

14

duplicative action, vitiating a core purpose of the rule against claim-splitting to "protect the defendant from being harassed by repetitive actions based on the same claim." *Armadillo Hotel*, 84 F.4th at 628; *see also Adams*, 487 F.3d at 693. The Court declines to do so.

Because Google's motion remains unresolved, and because Valtrus and Key Patent impermissibly filed *Valtrus II* to circumvent an adverse ruling in *Valtrus I*, the Court grants Google's motion and exercises its discretion to dismiss *Valtrus II* without leave to amend.

### III.    The Court grants the parties' administrative sealing motions.

In connection with its motion to dismiss *Valtrus I*, Google filed an administrative motion to consider whether certain materials submitted in support of the motion to dismiss should be sealed because they contain Valtrus's confidential information. Google initially proposed to redact parts of the motion to dismiss itself and to seal eleven exhibits in their entirety. Such a request is almost always overbroad. *See Alpha & Omega Semiconductor Ltd. v. Force MOS Tech. Co.*, No. 22-CV-05448-PCP, 2025 WL 1894838, at *5 (N.D. Cal. July 9, 2025) (explaining that "[o]nly in rare circumstances should a party seek to file portions of a … brief under seal" and instructing parties "to avoid sealing documents in their entirety" (quoting Civ. L.R. 79-5(a) and (e))). But in its response, Valtrus substantially narrowed the sealing request, abandoning any proposal to redact Google's motion to dismiss or to seal exhibits in their entirety. Valtrus instead asks only to redact certain information from six exhibits, including: (1) the financial terms and identities of third-parties involved in Valtrus's patent purchase agreement with HPE; (2) portions of an Eastern District of Texas order that the issuing court placed under seal; (3) portions of a deposition transcript from the same Eastern District of Texas litigation, which that court sealed because it discusses details of Valtrus's strategic acquisition of the asserted patents; (4) portions of the internal minutes from a meeting of Key Patent's Board of Directors, which disclose the terms and strategy of Valtrus and Key Patent's acquisition of the asserted patents from HPE; and (5) portions of emails disclosed in separate litigation filed by Pictiva Displays International, Ltd. (another Key Patent subsidiary) against Samsung Electronics, Co., neither of which are parties to this action.[5]

---

[5] Following Valtrus's response, Google filed an unopposed motion to replace three of the exhibits it filed under seal with excerpted versions of those exhibits. *See* Dkt. No. 329. Because the Court

Valtrus's sealing request is subject to the "compelling reasons" standard, under which Valtrus "must articulate compelling reasons supported by specific factual findings … that outweigh the general history of access and the public policies favoring disclosure." *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178–79 (9th Cir. 2006) (citation modified).

The Court finds that compelling reasons support Valtrus's proposed redactions. Most of the redacted information pertains to sensitive financial and strategic information involving Valtrus and Key Patent's acquisition of certain patents or the identities of third parties involved in such acquisition. Disclosure of this information would cause significant competitive harm, providing a compelling reason to seal the information. *See Realtek Semiconductor Corp. v. MediaTek, Inc.*, 769 F. Supp. 3d 1067, 1102 (N.D. Cal. 2025); *Realtek Semiconductor Corp. v. MediaTek, Inc.*, 732 F. Supp. 3d 1101, 1119 (N.D. Cal. 2024). The remaining redactions are to orders and discovery materials in other litigation in which the presiding court has already determined that the information should remain under seal. This Court defers to those presiding courts' determinations that compelling reasons exist to seal this information. *See Google LLC v. Latam Airlines Grp. S.A. Inc.*, No. 25-cv-04984- BLF, 2025 WL 2263004, at *2 (N.D. Cal. July 2, 2025).

The Court also concludes that the compelling reasons supporting sealing of this information "outweigh the public's interest in disclosure." *Kamakana*, 447 F.3d at 1178. Neither the parties nor the Court rely on most of the information Valtrus seeks to redact, so the public's interest in accessing that information is minimal. *See Network Appliance, Inc. v. Sun Microsystems Inc.*, No. C-07-06053 EDL, 2010 WL 841274, at *2 (N.D. Cal. Mar. 10, 2010); *see also Kamakana*, 447 F.3d at 1179 (explaining that "the public has less of a need for access to court records" that are "unrelated, or only tangentially related, to the underlying cause of action" (quoting *Phillips v. General Motors Corp.,* 307 F.3d 1206, 1213 (9th Cir. 2002)).

Accordingly, Valtrus's narrowed sealing request is granted. Within 14 days of this order, the parties shall file on the public docket redacted versions of the documents subject to this order,

---

grants Valtrus's request to redact portions of the original exhibits, it finds it unnecessary to replace those exhibits. Google's motion to replace the exhibits is therefore denied.

United States District Court
Northern District of California

unless an already-filed version comports with this order. The parties shall also file unredacted versions of any documents they previously filed under seal but that are no longer subject to a sealing request.

## CONCLUSION

For the foregoing reasons, Google's motions to dismiss *Valtrus I* for lack of constitutional standing and to dismiss *Valtrus II* based on claim splitting are GRANTED. The dismissal of both cases is without leave to amend but without prejudice. The parties' administrative sealing motions are also GRANTED. The remaining motions pending before the Court are DENIED as moot.

**IT IS SO ORDERED.**

Dated: March 16, 2026

P. Casey Pitts
United States District Judge

United States District Court
Northern District of California

17